## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE ST. JOE COMPANY, | ) |
| | ) |
|     Plaintiff, | ) Civil Action No.:  10-733 (GMS) |
| | ) |
|     v. | ) On removal from the Superior Court of the |
| | ) State of Delaware in and |
| | ) for New Castle County |
| HALLIBURTON ENERGY SERVICES, INC., | ) Civil Action No. 10C-08-032 PLA |
| | ) |
|     Defendant. | ) JURY DEMANDED |
| | ) |

## DEFENDANT HALLIBURTON ENERGY SERVICES, INC.'S
## ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### PINCKNEY, HARRIS & WEIDINGER, LLC

/s/Michael A. Weidinger
Michael A. Weidinger (DE I.D. No. 3330)
Joanne P. Pinckney (DE I.D. No. 3344)
Patricia R. Uhlenbrock (DE I.D. No. 4011)
PINCKNEY, HARRIS & WEIDINGER, LLC
1220 North Market Street, Suite 950
Wilmington, Delaware  19801
Telephone: (302) 504-1497
Facsimile: (302) 655-5213

*and*

### GODWIN RONQUILLO PC

**Donald E. Godwin**
***Attorney in Charge, pending pro hac vice***
***admission***
dgodwin@godwinronquillo.com
Bruce W. Bowman, Jr.
bbowman@godwinronquillo.com
Jenny L. Martinez
jmartinez@godwinronquillo.com
Floyd Hartley
fhartley@godwinronquillo.com

Gavin Hill
ghill@godwinronquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

*-and-*

R. Alan York
ayork@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

September 17, 2010

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## Table of Contents

**Page**

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS...................1

II.    SUMMARY OF ARGUMENT ...............................................................................2

III.   STATEMENT OF FACTS ...................................................................................3

IV.    ARGUMENT ........................................................................................................3

       A.     HESI Properly Removed Plaintiff's State Court Action as the Complaint
              Asserts Claims Arising Under the Federal Oil Pollution Act of 1990....................3

              1.     The determination of whether Plaintiff's claims arise under
                     admiralty tort jurisdiction is a necessary first step in determining whether
                     such claims are removable under OPA..................................................................4

              2.     The case law cited by St. Joe fails to establish that its claims arise
                     under state law. ...................................................................................................8

              3.     OPA displaces maritime claims seeking damages recoverable
                     under the statute. ...............................................................................................10

              4.     OPA claims are removable to federal court.................................................13

       B.     To the Extent St. Joe's Claims Arise under State Law, They Can Only
              Arise under State Law as Surrogate Federal Law Pursuant to OCSLA's
              Adjacent State Law Provision, Which Raises a Federal Question for
              Removal Purposes................................................................................................13

              1.     Contrary to St. Joe's assertion, OCSLA jurisdiction does exist.................14

              2.     State law can only apply to St. Joe's claims as proxy federal law
                     pursuant to Section 1333(a)(2)(A), in which event a federal question arises
                     for removal purposes..........................................................................................15

              3.     In arguing that OCSLA provides no basis for removal, St. Joe
                     effectively concedes that maritime law governs its claims arising out of
                     the *Deepwater Horizon* Incident.......................................................................17

       C.     The Complaint Raises a Substantial Federal Issue that Belongs in Federal
              Court. ...................................................................................................................19

V.     CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

CASES

*Apache Corp. v. Global Santa Fe Drilling Co.*,
    2010 U.S. Dist. LEXIS 55447 (W.D. La. June 4, 2010) ........................................16

*Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*,
    911 F.2d 1050 (5th Cir. 1990) ...................................................................................6

*Demette v. Falcon Drilling Co.*,
    280 F.3d 492 (5th Cir. 2002), *overruled in part on other grounds*, *Grand Isle
    Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) ....................10

*Dennis v. Bud's Boat Rental, Inc.*,
    987 F. Supp. 948 (E.D. La. 1997) ...........................................................................17

*E. River S.S. Corp. v. Transamerica Delaval Inc.*,
    476 U.S. 858 (1986) ...................................................................................................4

*In re Exxon Valdez*,
    767 F. Supp. 1509 (D. Alaska 1991) ..................................................................7, 11

*Gabarick v. Laurin Mar. (Am.) Inc.*,
    623 F. Supp. 2d 741 (E.D. La. 2009) ......................................................................12

*Gatlin Oil Co. v. United States*,
    169 F.3d 207 (4th Cir. 1999) ...................................................................................11

*Grable & Sons Metal Prods, Inc. v. Darue Eng'g. & Mfg.*,
    545 U.S. 308 (2005).................................................................................................19

*Hufnagel v. Omega Serv. Indus., Inc.*,
    182 F.3d 340 (5th Cir. 1999) .............................................................................14-17

*Isla Corp. v. Sundown Energy, LP*,
    2007 U.S. Dist. LEXIS 31259 (E.D. La. Apr. 27, 2007)..........................................9

*In re Jahre Spray II K/S*,
    1996 U.S. Dist. LEXIS 11594 (D.N.J. Aug. 5, 1996)............................................11

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
    513 U.S. 527 (1995).............................................................................................5-7

*Johnson v. Colonial Pipeline Co.*,
    830 F. Supp. 309 (E.D. Va. 1993) ..........................................................................11

*Leboeuf v. Texaco*,
    9 F. Supp. 2d 661 (E.D. La. 1998)..........................................................................13

*Marathon Pipe Line Co. v. LaRoche Indus. Inc.*,
   944 F. Supp. 476 (E.D. La. 1996) ........................................................................9

*Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*,
   924 F. Supp. 1436 (E.D. Va. 1996) ...............................................................9, 11

*In re Oriental Republic Uru.*,
   821 F. Supp. 950 (D. Del. 1993).........................................................................11

*Ronquille v. MMR Offshore Servs., Inc.*,
   353 F. Supp. 2d 680 (E.D. La. 2004) ..................................................................17

*Russo v. M/T Dubai Star*,
   2010 U.S. Dist. LEXIS 50967 (N.D. Cal. Apr. 29, 2010) .....................................9

*S. Port Marine, LLC v. Gulf Oil Ltd. P'ship.*,
   234 F.3d 58 (1st Cir. 2000)......................................................................9, 11-13

*Seaboats, Inc. v. Alex C Corp.*,
   2003 U.S. Dist. LEXIS 1301 (D. Mass. Jan. 30, 2003) .........................................9

*Sisson v. Ruby*,
   497 U.S. 358 (1990)..........................................................................................5-6

*Snyder Oil Corp. v. Samedan Oil Corp.*,
   208 F.3d 521, 524 (5th Cir. 2000). .....................................................................17

*Tanguis v. M/V Westchester*,
   153 F. Supp. 2d 859 (E.D. La. 2001) ............................................................11, 13

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
   87 F.3d 150 (5th Cir. 1996) ................................................................................15

*United States v. Louisiana, Texas, Mississippi, Alabama & Florida*,
   363 U.S. 1 (1960)................................................................................................8

*Williams v. Potomac Elec. Power Co.*,
   115 F. Supp. 2d 561 (D. Md. 2000) .....................................................................9

## STATUTES

28 U.S.C. § 1331..............................................................................................14, 17

28 U.S.C. § 1441(b) ..........................................................................................13, 17

Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.* ("OPA")................................1, 11

33 U.S.C. § 2702 ..............................................................................................12, 13

33 U.S.C. § 2718(a)(1)(A) ................................................................................................9

Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA") ..................................1

43 U.S.C. §§ 1301(2), 1302, 1312 ................................................................................8

43 U.S.C. § 1333(a)(2)(A) ........................................................................................ 15-17

43 U.S.C. § 1349(b)(1) ............................................................................................ 14-15

46 U.S.C. § 740 ..............................................................................................................7

46 U.S.C. § 30101 ..........................................................................................................7

Fla. Stat. Ann. §§ 376.001 *et seq.* ..............................................................................9

Fla. Stat. Ann. § 376.205 ..............................................................................................9

**OTHER AUTHORITIES**

FED. R. CIV. P. 9(h) ........................................................................................................5

Defendant Halliburton Energy Services, Inc. ("HESI") respectfully submits this Answering Brief in Opposition to Plaintiff's Motion to Remand, and shows the Court as follows:

### PRELIMINARY STATEMENT

In this action, Plaintiff The St. Joe Company ("St. Joe" or "Plaintiff") seeks to bring Florida common law claims[1] against HESI, in Delaware State court, arising out of a maritime incident that occurred in federal waters over the Outer Continental Shelf ("OCS") in the Gulf of Mexico. The incident resulted in the sinking of a vessel, the *Deepwater Horizon*, and the discharge of oil into the Gulf of Mexico (hereinafter, the "*Deepwater Horizon* Incident" or "Incident"). As HESI is a Delaware corporation, removal is proper only on the basis of federal question removal jurisdiction. HESI removed St. Joe's action to federal court on the basis that federal question removal jurisdiction arises under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.* ("OPA") and, alternatively, under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA"). St. Joe seeks to remand this action back to Delaware State court.

Whether federal question removal jurisdiction exists in this case, either under OPA or, alternatively, under OCSLA, turns on one critical inquiry—an inquiry that Plaintiff does not squarely address. That critical issue is whether Plaintiff's claims arise under admiralty jurisdiction. They cannot arise under both state law and admiralty.

### I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On August 4, 2010, St. Joe filed its Complaint against HESI in Delaware Superior Court alleging that HESI breached federal regulations and committed torts aboard the *Deepwater Horizon*—a semi-submersible drilling rig operating on the Outer Continental Shelf—thereby

---

[1] It is not apparent from the Complaint under which state's laws St. Joe asserts its common law claims. However, in its remand briefing, St. Joe now asserts that its claims are asserted under Florida law. *See* Plaintiff's Opening Brief in Support of Its Motion to Remand ("O.B.") at 1. [D.I. 12].

causing and/or contributing to its sinking on April 20, 2010, and the resulting release of oil into the Gulf of Mexico.  [D.I. 1].  St. Joe seeks damages allegedly caused by the oil spill.

On August 27, 2010, HESI removed this action based on this Court's federal question jurisdiction.  [D.I. 1].  On August 30, 2010, HESI filed a Motion to Stay all proceedings pending a ruling by the Multi-District Litigation (MDL) panel as to whether to transfer this case to the United States District Court for the Eastern District of Louisiana, the Honorable Carl J. Barbier presiding, for pre-trial consolidation with other cases arising out of the Incident.  [D.I. 10].  Also on August 30, 2010, HESI filed a notice with the MDL panel identifying this case as a potential "tag-along-action" and seeking a conditional transfer order transferring this case to the MDL proceedings.  [D.I. 14].

## II.   <u>SUMMARY OF ARGUMENT</u>

1.      The law is clear.  If, as HESI asserts, admiralty jurisdiction applies to Plaintiff's claims— and it does—*maritime law* governs St. Joe's claims *to the exclusion of state law* since maritime law ousts state law from its own application.  In that event, OPA displaces Plaintiff's federal maritime claims since the oil spill-related damages sought are recoverable exclusively under OPA.  Thus, Plaintiff's claims are only cognizable under OPA and, therefore, such claims raise a federal question for removal purposes.

2.      In the alternative, if, as St. Joe asserts, Plaintiff's claims arise under *state law*, they cannot arise under state law of its own force.  Indeed, as Plaintiff concedes, its purported claims arise out of an incident that occurred on the OCS, well beyond any state's territorial waters, including those of the State of Florida.  If Plaintiff's claims arise under state law, they can only do so pursuant to the "adjacent state law" provision of OCSLA, which applies state law as surrogate federal law in certain situations on the OCS.  In that instance, OCSLA's "adjacent state law" provision provides another federal question for removal purposes.

3.      Even if St. Joe's state law claims are properly pleaded, removal is still appropriate under federal question jurisdiction because the claims raise substantial federal issues properly addressed in federal court.

## III.      STATEMENT OF FACTS

St. Joe's claims arise out of the sinking of the *Deepwater Horizon*, an ultra-deepwater oil rig, that was engaged in the drilling of an exploratory oil well less than 50 miles off the coast of Louisiana in an area designated on the Outer Continental Shelf as Block 252, Mississippi Canyon.  (Compl. ¶¶ 1, 3, 37, 41-42, 48, 94-96).  Its sinking resulted in the release of oil into the Gulf of Mexico from the well.  (*Id.* ¶ 100).

## IV.      ARGUMENT

### A.      HESI Properly Removed Plaintiff's State Court Action as the Complaint Asserts Claims Arising Under the Federal Oil Pollution Act of 1990.

Opting to focus on hyperbole and legal theater, St. Joe has either misunderstood or mischaracterized both HESI's position and the relevant law.[2]  With respect to OPA, St. Joe's primary argument is that "Halliburton erroneously contends that Plaintiff cannot bring *state common law claims* stemming from the Incident because they are supposedly *preempted by OPA*."  (O.B. at 5) (emphasis added).  From this mistaken premise, St. Joe then allocates most of its brief to arguing that OPA does not preempt *state law claims*.  But that is not HESI's position, and St. Joe's argument that OPA preserves state law claims is entirely irrelevant and off point.[3]

_____

[2] St. Joe argues against what it believes to be HESI's position, apparently gleaned from pleadings filed in numerous other federal court proceedings arising out of the *Deepwater Horizon* Incident. *See, e.g.*, O.B. at 13, 13 n.47 (discussing HESI's OPA arguments in "no fewer than twenty-four other [*Deepwater Horizon*] actions"), 19 & n.68 (discussing HESI's OCSLA arguments in other *Deepwater Horizon* cases).   As discussed herein, St. Joe either misunderstands or mischaracterizes HESI's arguments.

[3] Indeed, HESI has not argued, in this case or any other, that OPA preempts properly pleaded state law claims.  Therefore, the Court should disregard a significant portion of St. Joe's brief

3

To be clear, HESI does not assert that OPA preempts St. Joe's purported state law claims. Rather, *St. Joe has no state law claims*. St. Joe expends considerable effort arguing that OPA's state law savings provision "saves" its state law claims. However, what it fails to point out is that for OPA's state law savings provision to save state law claims, such claims must arise under state law in the first instance. St. Joe's claims do not. Regardless of St. Joe's artful pleading, its claims arise under admiralty jurisdiction and, therefore, they are governed by maritime law, not state law. As maritime claims, OPA preempts or displaces them because they seek the types of damages that Congress intended to be recovered exclusively under OPA.[4] Since St. Joe's claims are only cognizable under OPA, they "arise under" OPA and present a federal question for removal purposes.

1. **The determination of whether Plaintiff's claims arise under admiralty tort jurisdiction is a necessary first step in determining whether such claims are removable under OPA.**

As HESI makes clear in its motion to dismiss, a threshold question in this litigation is whether St. Joe's claims, if any, arise under admiralty jurisdiction. This issue is equally critical for purposes of resolving the instant remand dispute. *St. Joe's claims cannot arise under both state law and admiralty law*, as admiralty jurisdiction normally ousts state law from its own application. *See E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law"). Moreover, it makes no difference whether the Complaint specifically invokes admiralty jurisdiction. If the

---

arguing that OPA does not preempt state law claims, or discussing defensive preemption in the context of removal. *See* O.B. at 4-14.

[4] The doctrine of preemption pertains to the effect of federal law on *state law*. However, the term "displacement" more accurately characterizes the effect of a federal statute like OPA on a *federal common law claim* (*i.e.*, maritime claim), which is the relevant principle discussed here. Notwithstanding the distinction, case law discussing the effect of OPA on maritime claims uses the terms "preempt" and "displace" interchangeably. For that reason, HESI has asserted that OPA "preempts or displaces" maritime claims.

allegations of the Complaint invoke admiralty jurisdiction, federal maritime law governs the claims.  *See* FED. R. CIV. P. 9(h) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.").

This case is controlled by the Supreme Court's decision in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), which clarified the test for finding admiralty tort jurisdiction.  Applying *Grubart*, St. Joe's claims clearly arise under admiralty jurisdiction, and they are governed by maritime law, not state law.

In *Grubart*, the Supreme Court held that "a party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions of both [i] of location and [ii] of connection with maritime activity." *Id.* at 534.  First, to satisfy the location test, the Court must determine only "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.*  The *Deepwater Horizon* qualifies as a "vessel" on  navigable water,[5] as St. Joe concedes.[6]

Second, the Supreme Court in *Grubart* explained that the "connection with maritime activity" test raises two "*Sisson* inquiries."[7]  The first *Sisson* inquiry must "assess the general

---

[5] The issue of whether the *Deepwater Horizon* was a "vessel" is thoroughly briefed in HESI's Opening Brief in Support of Its Motion to Dismiss Plaintiff's Complaint at 6, 6 n.8 [D.I. 17], demonstrating the *Deepwater Horizon*'s status as a "vessel" under applicable federal statutes and case law.  However, further consideration on this point is not necessary, for St. Joe has conceded that the *Deepwater Horizon* was a "vessel."  *See infra* note 6.

St. Joe further concedes that the *Deepwater Horizon* Incident occurred on navigable water.  *See* Compl. ¶ 37 (identifying the location of the *Deepwater Horizon* Incident as "less than 50 miles off the coast of Louisiana in an area designated on the Outer Continental Shelf as Block 252, Mississippi Canyon").  There is no question that a location nearly 50 miles off the coast of Louisiana on the open waters of the Gulf of Mexico constitutes navigable water.

[6] *See* O.B. at 14 (stating that "the *Deepwater Horizon* was a vessel") and 18 (asserting that the *Deepwater Horizon* "was a vessel").

[7] "*Sisson* inquiries" refer to inquiries developed by the Supreme Court in the case of *Sisson v. Ruby*, 497 U.S. 358, 363 (1990), which also dealt with the issue of whether claims arose under

features of the type of incident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (quotations and citations omitted). The Court in *Grubart* stressed that this inquiry focuses "*not on the specific facts* at hand but on whether the '*general features*' of the incident were 'likely to disrupt commercial activity.'" *Id.* at 538 (citations omitted) (emphasis added). Applying these principles, the *Grubart* Court found that the general features of that case—namely "damage by a vessel in navigable water to an underwater structure"—plainly constituted "the kind of incident that has a potentially disruptive impact on maritime commerce." *Id.* (quotations and citations omitted).

The facts alleged by St. Joe likewise are potentially disruptive of commercial maritime activity. St. Joe alleges, among other things, that HESI and other parties not named in this lawsuit were negligent with respect to their operation of and activities aboard the vessel, the *Deepwater Horizon*,[8] and alleges damages predominantly to the Gulf of Mexico,[9] a body of water "teeming with maritime activity." *Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*, 911 F.2d 1050, 1053 (5th Cir. 1990). Indeed, the Incident involved the sinking of a vessel. This *Sisson* prong of the maritime nexus inquiry is satisfied.

The second *Sisson* inquiry asks "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513

---

federal admiralty jurisdiction. The Supreme Court advanced the admiralty jurisdiction analysis further in *Grubart*, but retained the *Sisson* inquiries.

[8] *See generally*, Compl. ¶¶ 3-5, 9, 42-44, 48-93 (generally asserting that HESI's allegedly tortious conduct occurred aboard the *Deepwater Horizon* in the course of drilling an exploratory oil well); *see also* O.B. at 18 (alleging that "the *Deepwater Horizon* rig on which much of Halliburton's grossly negligent conduct took place was a vessel").

[9] Compl. ¶ 1 (alleging that "Halliburton's duties if performed properly would have protected . . . the Gulf of Mexico itself"); ¶ 96 (alleging that HESI's conduct caused "[t]he *Deepwater Horizon* [to burn] for two days until it sank on April 22, 2010"); ¶¶ 100-111 (alleging that the resulting oil spill caused damage to the Gulf of Mexico, including the closure of fisheries); ¶ 121 (alleging that St. Joe's alleged damages are "inextricably tied to the continued environmental vitality of the Gulf").

U.S. at 539 (quotations and citations omitted).   In *Grubart*, the Supreme Court described the general character of the activity as "repair or maintenance work on a navigable waterway performed from a vessel."   *Id.* at 540.   The Court further noted that "[n]avigation of boats in navigable waters clearly falls within the substantial [maritime] relationship[.]"   *Id.*   Likewise, here, the general character of the Incident is *oil and gas well drilling from a vessel on a navigable waterway*.   Clearly, the general character of the *Deepwater Horizon* Incident shows a significant relationship to general maritime activity.   *See, e.g., In re Exxon Valdez*, 767 F. Supp. 1509, 1512-14 (D. Alaska 1991) (finding oil spill caused by a navigating vessel has a significant relationship to maritime activity and holding "the oil spill is a maritime tort subject to admiralty jurisdiction").

The admiralty jurisdiction test set forth in *Grubart* is not affected by St. Joe's status as a land-based claimant or its alleged shoreside damages.   First, St. Joe's alleged damages—predicated on allegations of harm to the Gulf of Mexico—are themselves intensely maritime. Indeed, as St. Joe succinctly asserts, its alleged damages "are all intrinsically tied to the continued environmental vitality of the Gulf."   (Compl. ¶ 121).   Second, even assuming St. Joe can demonstrate that its alleged injury occurred on land, admiralty jurisdiction over its claims would still apply maritime law in lieu of substantive state law by virtue of the Admiralty Extension Act, 46 U.S.C. § 30101.[10]   As the Supreme Court has explained, "[t]he purpose of the [Admiralty Extension] Act was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, *even if such injury occurred on land*."   *Grubart*, 513 U.S. at 532 (emphasis added).   *See also In re Exxon Valdez*, 767 F. Supp. at 1512 (holding that

---

[10] The Admiralty Extension Act, which was codified at 46 U.S.C. § 740, has now been recodified at 46 U.S.C. § 30101.

damages that "occurred on land, such as the claims of shoreside businesses and fish processors" are subject to admiralty jurisdiction due to the Admiralty Extension Act).

Admiralty jurisdiction clearly attaches to any claims St. Joe may have arising out of the Incident.  Such claims are fundamentally maritime in nature and, therefore, arise under maritime law, not state law.  Any argument that St. Joe's claims arise under state law of its own force because its alleged injuries occurred on land is conclusively precluded by the Admiralty Extension Act.

**2.      The case law cited by St. Joe fails to establish that its claims arise under state law.**

Because it has either misunderstood or mischaracterized HESI's argument and the relevant law, St. Joe focuses its argument on the irrelevant point that OPA does not preempt state law claims and cites to numerous cases in support of that proposition.  However, none of those cases applies to the relevant question of whether OPA displaces St. Joe's claims, which are *maritime claims* seeking oil spill-related damages.  Indeed, St. Joe's authorities actually support HESI's position that its claims, if any, arise under maritime law, not state law.

In each and every case cited by St. Joe, the plaintiffs asserted state law claims arising out of incidents where the oil discharge at issue *occurred on state land or in state territorial waters*.[11]  Therefore, unlike here, the claims likely arose under state law of its own force because

---

[11] A state's territorial waters generally extend seaward from its coast for a distance of three (3) geographical miles.  *See* Submerged Lands Act ("SLA"), 43 U.S.C. §§ 1301(2), 1302, 1312.  Notably, the SLA ceded to Texas and Florida territorial waters in the Gulf of Mexico over a larger area—from their respective coastlines out to a distance of three *marine leagues* (a distance equivalent to nine geographical miles).  *See United States v. Louisiana, Texas, Mississippi, Alabama & Florida*, 363 U.S. 1, 65, 129 (1960).  Nevertheless, as set forth herein and in the Complaint, the *Deepwater Horizon* Incident occurred well beyond the territorial waters of even Florida.

the torts and oil discharges at issue occurred within those states' boundaries.[12]   Indeed, OPA's

state law savings provision, on which St. Joe so heavily relies, only saves state law claims to the

extent they impose liability or requirements related to the discharge of oil *within the state*.

Reinforcing the appropriate balance of the states' and the federal government's sovereign

interests and spheres of jurisdictional control, the text of that statutory provision provides in

relevant part that "[n]othing in this Act . . . shall . . . affect, or be construed or interpreted as

preempting, the authority of any State . . . from imposing any additional liability or requirements

with respect to . . . the *discharge* of oil or other pollution by oil *within such State*[.]"  33 U.S.C. §

2718(a)(1)(A) (emphasis added).   Thus, contrary to St. Joe's over-reaching argument that the

provision somehow "saves" or permits it to bring state common law claims arising out of torts

occurring *in federal waters*, that provision only purports to save state law claims to the extent

they arise out of oil discharges *within a state's territory*.[13]   *See, e.g., Seaboats, Inc. v. Alex C*

*Corp.*, 2003 U.S. Dist. LEXIS 1301, at *13 (D. Mass. Jan. 30, 2003) (construing OPA Section

2718(a) as preserving state authority to impose additional liability and requirements with respect

---

[12] *See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship.*, 234 F.3d 58, 60 (1st Cir. 2000) (gasoline spill *within Maine's Portland Harbor*); *Russo v. M/T Dubai Star*, 2010 U.S. Dist. LEXIS 50967, at *2 (N.D. Cal. Apr. 29, 2010) (oil spill *in the San Francisco Bay*); *Isla Corp. v. Sundown Energy, LP*, 2007 U.S. Dist. LEXIS 31259, at *2 (E.D. La. Apr. 27, 2007) (crude oil contamination arising out of ruptured oil storage tanks *on Louisiana land*); *Williams v. Potomac Elec. Power Co.*, 115 F. Supp. 2d 561, 562 (D. Md. 2000) (oil spill in a creek located *within Maryland's territorial waters*); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996) (oil spill due to a ruptured pipeline *on Louisiana land*); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1440 (E.D. Va. 1996) (oil spill *in Virginia's territorial waters*).

[13] Indeed, even the Florida Pollutant Discharge and Control Act, Fla. Stat. Ann. §§ 376.001 *et seq.*, which "impos[es] [] additional liability or requirements with respect to . . . the discharge of oil" as contemplated by OPA, only purports to authorize a cause of action where the discharge occurs within that state.  *See* Fla. Stat. Ann. § 376.205.  The statute makes clear that it covers "[s]pills, discharges, and escapes of pollutants occurring as a result of procedures involved in the transfer, storage, and transportation" of oil and other pollutants "within the jurisdiction of the state and state waters[.]"  *See generally, id.* § 376.021(3) (declaring the intent of the Florida legislature in enacting the statute).

to the discharge of oil "*within its boundaries.*") (emphasis added).  It is not surprising, therefore, that all of St. Joe's cited authority is limited to claims arising out of oil discharges on a state's land or within a state's territorial waters, the inevitable context in which the preservation of state law claims applies.  Because that authority is irrelevant to the instant case, St. Joe's argument that its claims arise under state law must be rejected.

It is undisputed that the Incident occurred well beyond any state's territorial waters.  It occurred on the federally-controlled waters of the Gulf of Mexico over the OCS.[14]  Accordingly, any claims St. Joe may have against HESI cannot arise under state law of its own force.  *See Demette v. Falcon Drilling Co.*, 280 F.3d 492, 499 (5th Cir. 2002) (stating that where an "incident occurred on the OCS beyond the territorial waters of Louisiana, the only way state law could have operated was by incorporation into federal law under OCSLA"), *overruled in part on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009).[15]  And to the extent St. Joe argues otherwise on the grounds that its alleged injuries occurred or manifested within the boundaries of Florida, the Admiralty Extension Act definitively establishes that maritime law ousts the application of state law in such instances.

### 3.  OPA displaces maritime claims seeking damages recoverable under the statute.

For removal purposes, establishing that St. Joe's claims are maritime claims and not state law claims has a significant implication.  Maritime claims are federal common law claims and, as such, OPA displaces them since they seek oil spill-related damages of the type recoverable under the federal statute.  OPA is the exclusive federal remedy for the types of damages alleged.

---

[14] *See* Compl. ¶ 37 (The Incident occurred "less than 50 miles off the coast of Louisiana in an area designated on the Outer Continental Shelf as Block 252, Mississippi Canyon").

[15] *See infra* at IV(B)(2), addressing the specific issue of OCSLA's incorporation of state law as surrogate federal law.

*See S. Port Marine*, 234 F.3d at 64-66 (citations omitted) (noting that Congress has established a "comprehensive" scheme that outlines with particularity the types of damages recoverable under OPA and that this is a "strong indication that Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution.").

OPA was enacted by Congress in the wake of the *Exxon Valdez* oil spill "to provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims."  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999).  OPA provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  OPA "represents Congress's attempt to provide a comprehensive framework in the area of marine oil pollution." *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citations omitted).  Its purpose is "to promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

No matter how artfully pleaded, St. Joe's maritime claims are cognizable only under OPA, if at all, as they seek relief for precisely the types of damages Congress intended to be recovered exclusively under that statute.  *See S. Port Marine*, 234 F.3d at 65-66; *see also In re Jahre Spray II K/S*, 1996 U.S. Dist. LEXIS 11594, at * 11 (D.N.J. Aug. 5, 1996) (noting OPA was developed as a comprehensive statutory scheme that would deal with all issues surrounding an oil spill, including liability levels for the respective responsible parties); *Nat'l Shipping*, 924 F. Supp. at 1447 ("OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons.").[16]

---

[16] Apart from the *Spray* case, OPA has only been discussed tangentially in cases in this Circuit. The District of Delaware has only addressed OPA once.  *See In re Oriental Republic Uru.*, 821

Pursuant to OPA, injured parties may recover a broad range of damages from a responsible party, including:

a.    Natural resources.  Damages for injury to, destruction of, loss of, or loss of use, of natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

b.    Real or personal property.  Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

c.    Subsistence use.  Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

d.    Revenues.  Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

e.    Profits and earning capacity.  Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

f.    Public services.  Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b)(2).

Thus, OPA provides the exclusive federal remedy for recovery of oil spill-related damages, preempting or displacing non-OPA-based claims (*i.e.*, maritime claims) for recovery of those damages.  *See S. Port Marine*, 234 F.3d at 65 ("Congress intended the OPA to be the exclusive federal law governing oil spills."); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp.

---

F. Supp. 950, 956 n.6 (D. Del. 1993) ("Congress's recent enactment of the [OPA] . . . allows recovery for certain damages resulting from oil spills . . .") (internal citations omitted).

2d 741, 750-51 (E.D. La. 2009) ("[E]valuation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA" and "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA.").

St. Joe claims that:  (1) it has suffered direct, physical damages to its real estate and business interests; and (2) it has been damaged by the diminution in value of its properties, its inability to rent properties it owns and/or manages, loss of business, profits, and revenue, and the destruction of its enterprise value.  (Compl. ¶¶ 120, 127).  Clearly, these damage categories are encompassed by § 2702(b) of OPA.  Because "Congress intended OPA to be the exclusive federal law governing oil spills," *S. Port Marine*, 234 F.3d at 65, St. Joe's claims for recovery of oil spill-related damages, which claims would otherwise arise under federal admiralty jurisdiction, are cognizable only under OPA.

### 4.  OPA claims are removable to federal court.

Since the claims set forth in St. Joe's Complaint are only cognizable under OPA, they raise a federal question and are properly removed to federal court.  *See Tanguis*, 153 F. Supp. 2d at 869 ("OPA claims arise under the 'Constitution, treaties or laws of the United States' and are removable to federal court pursuant to 28 U.S.C. § 1441(b)"); *Leboeuf v. Texaco,* 9 F. Supp. 2d 661, 663-665 (E.D. La. 1998) (acknowledging that an OPA claim presents a federal question and would be removable under 28 U.S.C. § 1441(b)).

### B.  To the Extent St. Joe's Claims Arise under State Law, They Can Only Arise under State Law as Surrogate Federal Law Pursuant to OCSLA's Adjacent State Law Provision, Which Raises a Federal Question for Removal Purposes.

In its Notice of Removal, HESI asserts a federal question basis for removal under OCSLA "in addition, *or in the alternative*."  (Notice of Removal ¶ 9) (emphasis added).  As set forth above, removal under OPA is proper because the claims asserted in the Complaint are

maritime in nature and, thus, are cognizable only under OPA.[17]   However, in the unlikely event

that the Court should find that maritime law does not apply to St. Joe's claims or that the claims

arise under state law, such claims are properly removed under OCSLA.   OCSLA's adjacent state

law provision is the only basis for the application of state law to claims arising out of an incident

in federal waters over the OCS.   Thus, if state law applies, it is only by virtue of OCSLA's

adjacent state law provision, which presents a federal question for removal purposes.

### 1.        Contrary to St. Joe's assertion, OCSLA jurisdiction does exist.

St. Joe erroneously asserts that "removal under OCSLA is improper because it does not

create a basis for removal as a matter of law, and because OCSLA jurisdiction does not apply to

vessels such as the *Deepwater Horizon*."[18]   Both of these assertions are legally flawed and

inaccurate.   OCSLA *does* provide a basis for removal in certain situations, and OCSLA *does*

provide jurisdiction over cases involving vessels.

St. Joe's confusion is based entirely upon the erroneous premise that OCSLA jurisdiction

does not apply to the *Deepwater Horizon* because it is vessel.   St. Joe confuses original

jurisdiction and removal jurisdiction.   OCSLA's grant of original jurisdiction is very broad.

Indeed, Section 1349(b)(1) of OCSLA grants *original* federal jurisdiction to all "cases and

controversies arising out of, or in connection with . . . any operation conducted on the outer

Continental Shelf which involves exploration, development, or production of the minerals, of the

subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals[.]"

---

[17] Where, as here, claims fall within OCSLA's grant of original jurisdiction and also arise under *maritime law*, no federal question removal jurisdiction exists under OCSLA because maritime law, as federal common law, does not "arise under the Constitution, treaties, or laws of the United States" for purposes of 28 U.S.C. § 1331.   *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 348, 348 n.4 (5th Cir. 1999).   Nevertheless, St. Joe's maritime claims would be removable on the basis of federal question jurisdiction under OPA.   *See supra* at IV(A).

[18] O.B. at 3.

43 U.S.C. § 1349(b)(1)(A).   Under the plain text of this provision, it does not matter if the case involves a vessel, a fixed platform or some other type of asset.   *See Hufnagel v. Omega Services Industries, Inc.*, 182 F.3d 340, 350 (5th Cir. 1999) (applying a broad "but for" test under Section 1349(b)(1) to establish original jurisdiction under OCSLA—"but for" activity on a drilling platform involved in the "exploration, development, or production" of minerals on the OCS, the claim would not have arisen; therefore, OCSLA applies); *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153-55 (5th Cir. 1996) (explaining that OCSLA's Section 1349(b)(1) "is very broad" and grants original jurisdiction over all cases in which an accident would not have occurred "but for" a party's operations on the OCS for the purpose of exploring for, developing, removing or transporting natural resources).

St. Joe's allegations clearly demonstrate that the *Deepwater Horizon* Incident falls squarely within OCSLA's broad grant of original federal jurisdiction.   The Complaint alleges that (1) the *Deepwater Horizon* was conducting operations on the OCS (Compl. ¶ 37); and (2) the *Deepwater Horizon*'s operations, and the activities of HESI aboard the vessel, were in connection with the exploration and/or development of minerals (*i.e.*, the drilling of an exploratory oil well) (Compl. ¶¶ 37, 42).   There is no question that OCSLA *applies* to the *Deepwater Horizon* and that the court has original jurisdiction of this case pursuant to OCSLA.   Moreover, the *Deepwater Horizon*'s status as a vessel is immaterial to the question of whether original jurisdiction exists under OCSLA, and St. Joe cannot seriously contend otherwise.

**2.      State law can only apply to St. Joe's claims as proxy federal law pursuant to Section 1333(a)(2)(A), in which event a federal question arises for removal purposes.**

Whether federal question removal jurisdiction exists depends on whether *maritime law* or *adjacent state law* governs the claims at issue.   Claims arising under OCSLA's broad original jurisdiction are governed either by maritime law or by the law of an adjacent state.   *See, e.g.,*

*Hufnagel*, 182 F.3d at 350-52 (explaining that where maritime claims also fall with OCSLA's original jurisdictional grant, substantive maritime law continues to apply, but non-maritime claims are governed by adjacent state law pursuant to Section 1333(a)(2)(A)); *Apache Corp. v. Global Santa Fe Drilling Co.*, 2010 U.S. Dist. LEXIS 55447, at * 21 (W.D. La. June 4, 2010) (explaining that OCSLA jurisdiction and admiralty jurisdiction "are not mutually exclusive" and that while original jurisdiction under OCSLA applies, claims may be governed either by maritime law (where admiralty jurisdiction attaches) or "adjacent state law").

St. Joe vehemently argues that state law applies to its claims.  However, the only basis on which state law could apply is pursuant to OCSLA's adjacent state law provision, which applies, as a surrogate for federal law, the law of the adjacent state in *certain situations* on the OCS.  *See* 43 U.S.C. § 1333(a)(2)(A) (applying, as surrogate federal law, "the civil and criminal laws of each adjacent State . . . for that portion of the subsoil and seabed of the outer Continental Shelf, and *artificial islands* and *fixed structures* erected thereon. . . ." (emphasis added)).  HESI maintains, in this and other cases arising out of the Incident,[19] that the "adjacent state law" provision of OCSLA does not apply to claims arising out of the Incident because (1) the

---

[19] St. Joe incorrectly asserts that HESI has taken the position in other cases that the *Deepwater Horizon* "rig was a 'vessel' and therefore not subject to OCSLA at all." (O.B. at 19).  This assertion of half-truth is both uninformed and wrong.  HESI's position, both here and in other cases, is that the *Deepwater Horizon* is a "vessel."  HESI has not taken the position that OCSLA does not apply "at all," nor could it, given the statute's broad grant of original jurisdiction over cases involving mineral operations on the OCS, even when vessels are involved.  Rather, HESI's consistent position is that OCSLA's *adjacent state law provision* (which applies more narrowly than the provision granting original jurisdiction) does not apply so as to incorporate the law of the adjacent state.  This position is clearly set forth in the portions of HESI's prior briefing that St. Joe quotes. (*See* O.B. at 19, nn. 66, 68).  The language quoted there asserts properly HESI's position that the *Deepwater Horizon* was not an "OCSLA situs" because it was "neither an artificial island nor a fixed platform."  The term "OCSLA situs" and the related argument is specific to whether §1333(a)(2)(A) of OCSLA, the adjacent state law provision, applies.  It does not speak to the broader issue of whether original jurisdiction under OCSLA applies, and St. Joe's attempt to assert otherwise takes HESI's statements out of context.

*Deepwater Horizon* was neither an "artificial island" nor a "fixed structure" erected on the subsoil or seabed of the OCS within the meaning of Section 1333(a)(2)(A), and (2) claims arising out of the *Deepwater Horizon* Incident arise under admiralty jurisdiction, and the resulting application of maritime law ousts state law.[20]

The only way St. Joe's claims can arise under state law is if the *Deepwater Horizon* was an "OCSLA situs" to which OCSLA's adjacent state law provision applies. In that event, St. Joe's claims could arise under state law only as surrogate federal law pursuant to Section 1333(a)(2)(A).[21] And, if §1333(a)(2)(A) applies to St. Joe's claims, federal question removal jurisdiction exists under OCSLA making removal to federal court proper. *See Hufnagel*, 182 F.3d at 351 (holding that non-maritime claim governed by OCSLA's adjacent state law provision "arises under" OCSLA within the meaning of 28 U.S.C. §§ 1441(b) and 1331, rendering it removable).

3.   **In arguing that OCSLA provides no basis for removal, St. Joe effectively concedes that maritime law governs its claims arising out of the *Deepwater Horizon* Incident.**

---

[20] *See* HESI's Opening Brief on Motion to Dismiss Plaintiff's Complaint at 5-11. [D.I. 17].

[21] Even if Section 1333(a)(2)(A) were to apply in this case, Louisiana law likely would apply as adjacent state law, not Florida law as St. Joe asserts. In *Snyder Oil Corp. v. Samedan Oil Corp.*, the court considered four kinds of evidence to determine which state was considered "adjacent" to an OCSLA situs: (1) geographic proximity; (2) which coast federal agencies consider the subject platform to be "off of"; (3) prior court determinations; and (4) projected boundaries. 208 F.3d 521, 524 (5th Cir. 2000). Louisiana is closer to the situs of the *Deepwater Horizon* Incident than any other state, including Florida, and the Minerals Management Service (MMS) (n/k/a Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE)) has described the *Deepwater Horizon* Incident as occurring "50 miles offshore Louisiana" on its official website linking a webpage describing the *Deepwater Horizon* Incident, http://www.mms.gov/DeepwaterHorizon.htm. In addition, federal district courts have noted that other locations in the Mississippi Canyon are adjacent to the State of Louisiana and have applied Louisiana law as surrogate federal law where § 1333(a)(2)(A) has applied. *See, e.g., Ronquille v. MMR Offshore Servs., Inc.*, 353 F. Supp. 2d 680, 682 n.4 (E.D. La. 2004); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 949-954 (E.D. La. 1997). Therefore, even if OCSLA were to apply adjacent state law in this case, it likely would apply Louisiana law, not Florida law.

While the law applicable to this remand dispute is clear, St. Joe's position is not.  At the outset of its brief, St. Joe repeatedly asserts that its claims arise under state law and are saved under OPA's state law savings provision.  St. Joe then abruptly changes its position when addressing whether OCSLA provides a basis for removal.  Indeed, in asserting that OCSLA does not apply to its claims, St. Joe effectively argues and concedes that claims arising out of the *Deepwater Horizon* Incident, which would include its own claims, are *maritime claims*.

For example, attempting to argue that OCSLA does not apply, St. Joe affirmatively argues that "the *Deepwater Horizon* was a vessel and therefore not subject to OCSLA at the time of the Incident."  (O.B. at 14).  In further support of that assertion, St. Joe cites to case law which stands for the propositions that (1) a semi-submersible rig like the *Deepwater Horizon* is a vessel to which maritime law applies,[22] and (2) since the *Deepwater Horizon* is a vessel and not a "fixed structure" or "stationary platform" to which OCSLA's adjacent state law provision applies, torts arising in connection with such a vessel are governed by maritime law.[23]  Finally, and significantly, St. Joe states that "Halliburton has already *conceded* in other actions that its conduct and the resulting tort claims are *maritime* in nature."[24]

In the foregoing concessions, St. Joe affirmatively agrees that tort claims arising out of the *Deepwater Horizon* Incident—including its own claims—are maritime claims.  Whether St. Joe wants to cast this as a unique discovery or, ironically, as a point on which HESI has "conceded," it makes no difference because HESI agrees with the assertion.  St. Joe's claims are maritime claims, and maritime law ousts state law from its own application.  Therefore, St. Joe has not properly pleaded state law claims.  Moreover, as set forth above, OPA displaces St. Joe's

---

[22] O.B. at 18, 18 n.63.

[23] *Id.* at 18 n.64.

[24] *Id.* at 17 (emphasis added) (footnote omitted).

maritime claims and, therefore, such claims are properly removed to federal court on the basis of federal question jurisdiction.

## C.      The Complaint Raises a Substantial Federal Issue that Belongs in Federal Court.

Even assuming *arguendo* St. Joe's claims are properly pleaded state law claims, which they are not, removal is still appropriate under federal question jurisdiction because the Complaint raises substantial federal issues.  With respect to "arising under" jurisdiction, the Supreme Court has recognized for nearly 100 years that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods, Inc. v. Darue Eng'g. & Mfg.*, 545 U.S. 308, 312 (2005).  While there is no bright-line test for such jurisdiction, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* (citation omitted).  This is precisely such a case.

Whether St. Joe's claims even exist under state law requires a construction and interpretation of, at least, the Admiralty Extension Act (extending maritime law to shoreside damages), OCSLA (incorporating adjacent state law as surrogate federal law on the OCS), or both.  These pivotal analyses of critical and determinative issues undoubtedly raise federal question jurisdiction. *See Grable & Sons Metal Prods.*, 545 U.S. at 314-15 (holding state action to quiet title "warrants federal jurisdiction" where the meaning of a federal statute was "an important issue of federal law that sensibly belongs in a federal court.").  Given the unique facts of this case, where St. Joe asserts claims against HESI for conduct occurring in waters nearly 50 miles offshore and *exclusively under federal control*, where the law controlling such claims depends on the interpretation of several federal statutes, and where such interpretation may

19

influence the interpretation of the same statutes in hundreds of other federal lawsuits arising out

of the same Incident, a substantial federal interest arises in this case justifying removal.

**V.    CONCLUSION**

For the foregoing reasons, removal was proper, and St. Joe's Motion to Remand should

be denied.

Respectfully submitted,

OF COUNSEL:

| | |
|---|---|
| **GODWIN RONQUILLO PC** | **PINCKNEY, HARRIS & WEIDINGER, LLC** |
| Donald E. Godwin, Esq. | /s/Michael A. Weidinger |
| Bruce W. Bowman, Jr., Esq. | Michael A. Weidinger (DE I.D. No. 3344) |
| Jenny L. Martinez, Esq. | Joanne P. Pinckney (DE I.D. No. 3344) |
| Floyd Hartley, Esq. | Patricia R. Uhlenbrock (DE I.D. No 4011) |
| Gavin Hill, Esq. | 1220 North Market Street, Suite 950 |
| 1201 Elm Street, Suite 1700 | Wilmington, Delaware 19801 |
| Dallas, Texas 75270 | Telephone: (302) 504-1497 |
| -and- | Facsimile: (302) 655-5213 |
| R. Alan York, Esq. | |
| 1331 Lamar, Suite 1665 | **ATTORNEYS FOR HALLIBURTON** |
| Houston, Texas 77010 | **ENERGY SERVICES, INC.** |